# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| **DEVRICK R. GAIL,** | **CIVIL ACTION NO. 6:14-169-KKC** |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| **WARDEN J.C. HOLLAND,** *et al.*, | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

Devrick R. Gail is an inmate at United States Penitentiary-Allenwood, located in White Deer, Pennsylvania. Gail has filed a *pro se* civil rights complaint alleging violations of his federal constitutional rights under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Gail's claims arise from events which allegedly transpired on January 12, 2013, while he was confined in the USP-McCreary, located in Pine Knot, Kentucky. Gail alleges that on that date, the named defendants,[1] all USP-McCreary officials, failed to properly supervise the internal operation of the prison and thus failed to protect him from physical harm at the hands of another USP-McCreary prisoner. Gail claims that the defendants' omissions resulted in another USP-McCreary prisoner physically attacking him with a dangerous weapon, causing him to sustain serious bodily injuries. Gail was unable to identify which federal law or provision of the U.S. Constitution applies to his claims, but construing his claims broadly, he appears to be claiming that the defendants violated his rights guaranteed under the Eighth Amendment of the U.S. Constitution, which prohibits cruel

---

[1] Gail named the following five defendants: (1) J.C. Holland, Warden, USP-McCreary; (2) "Rockcoustie," Assistant Warden, USP-McCreary; (3) "Seamans," Facility Administrator, USP-McCreary; (4) Leroy Chaney, Lieutenant, USP-McCreary; and (5) "M." Parsons, Correctional Officer, USP-McCreary.

and unusual punishment. By separate Order, Gail has been granted *in forma pauperis* status.

The Court has conducted a preliminary review of Gail's complaint because he asserts claims against government officials and because he has been granted pauper status. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Because Gail is not represented by an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). For the reasons set forth below, however, the Court determines that Gail's construed Eighth Amendment failure-to-protect claims must be dismissed because they are premature.

## ALLEGATIONS OF THE COMPLAINT

Gail alleges that on January 12, 2013, while he was confined in USP-McCreary, another inmate in that prison, identified as "Inmate J.W.,"[2] physically attacked him using an implement which Gail describes as "an eight-inch threaded rod/steel screw that was sharpen [sic] to a point and had a makeshift handle." [R. 1, p. 2] Gail states that as a result Inmate J.W. assaulting him with that implement, he sustained multiple stab wounds to his the left side of his head, face, chest, and leg, and that those injuries required him to be transported to a local hospital to receive medical treatment. [*Id.*]

Gail alleges that at the time Inmate J.W. assaulted him, the defendants failed to remain alert and attentive while on duty; failed to supervise prisoners' activities to ensure that the facility was safe and secure; failed to observe that Inmate J.W. had become intoxicated and had gained access to a dangerous and/or deadly weapon; failed to promptly respond to the situation after Inmate J.W. attacked him; failed to properly investigate the assault on him by Inmate J.W.; covered up the fact Inmate J.W. had

---

[2] The Court will refer to this individual as "Inmate J.W." to protect that inmate's confidentiality.

obtained a dangerous weapon and used it to assault him; conspired and falsified federal documents during that investigation; and failed to protect him from a harm from another inmate. Gail alleges that Inmate J.W. stabbed him repeatedly, and that "…for several minutes I was forced to defend myself against an intoxicated man wielding an eight inch threaded rod/steel screw (knife)." [*Id.*; see also, R. 1, p. 6 "[Inmate J.W.] was thoroughly intoxicated and had access to an eight inch threaded rod/steel screw on the night he stabbed me eleven times…"]

Numerous prison staff members filed reports or memoranda memorializing their observations of the altercation between Gail and Inmate J. W. *See* Memoranda, R. 1-1, pp. 21-31. These reports indicate that the prison staff members observed several inmates fighting in Unit 6A, including Gail and Inmate J.W., and that various prison staff members had to use physical force to end the fight. [*Id.*] On January 12, 2013, "M." Parsons, USP-McCreary Correctional Officer, issued an Incident Report charging Gail with "Fighting with Another Inmate," a violation of BOP Prohibited Acts Code ("PAC") 201. *See* Incident Report [R. 1-1, p. 8]. In Section 11 of the Incident Report, "Description of Incident," Parsons described the event as follows:

> Description of Incident (Date: 1-12-13 Time: 9:09 Staff become aware of incident)
>
> I, Officer M. Parsons observed a commotion in the unit. At that time I observed inmate Gail, Devrick #33115-183 fighting with inmate [J. W.] in front of the laundry room. At that time I ordered the inmates to stop fighting and they did not comply. At that time I placed inmate Gail on the floor and applied restraints. At that time inmate Gail was taken to Medical and Inmate [J.W.] was taken to SHU.

[*Id.*, § 11]

The Unit Disciplinary Committee referred the "Fighting" charge to a Disciplinary Hearing Officer ("DHO") for a hearing. [*Id.*, §§ 18(B)-21] On January 16, 2013, a

3

disciplinary hearing transpired on the "Fighting" charge against Gail, over which DHO Gary Mehler presided. On February 20, 2013, DHO Mehler prepared a written report of the proceeding. *See* DHO Report, R. 1-1, pp. 14-16. Mehler's Report states that at the hearing, Gail waived staff representation, offered no documentary evidence on his behalf, and, after being read the allegations of the Incident Report, gave the following statement on his own behalf: "It's true, I fought in self-defense." [*Id.*, p. 1, "Summary of Inmate Statement"] Mehler noted that in addition to the Incident Report, he also considered photographs taken on January 12, 2013, of those involved in the altercation; a clinical encounter dated January 12, 2103, regarding Inmate J.W.; and 13 separate memoranda submitted by prison staff members setting forth their observations of the events of January 12, 2103. [*Id.*, p. 15, § 5(D)]

Based on the Correctional Officer Parsons's description of the events of January 12, 2103, set forth in the Section 11 of the Incident Report, and the other enumerated materials submitted in support of the Incident Report, DHO Mehler found Gail guilty of the PAC 201 offense, as charged. [*Id.*, pp. 15-16] Mehler noted that at the hearing, Gail admitted that he was fighting at the relevant time, and that he did not refute "any portion of the description of the incident as reported in Section 11 of the Incident Report." [*Id.*, p. 16] Mehler noted that Gail's conduct threatened not only his own the health, safety, and welfare, but also that of other inmates and prison staff, and further observed that fights between two inmates often expanded to include more inmates, which then created an even larger problem which prison staff must contain. [*Id.*] The sanctions which DHO Mehler imposed consisted of the forfeiture of 27 days of good-time credits and 15 days of disciplinary segregation. [*Id.*]

4

On March 4, 2013, Gail submitted a BP-9 "Request for Administrative Remedy" to J.C. Holland, Warden of USP-McCreary. [R. 1-1, p. 2] In that administrative remedy request, Gail did not challenge either his disciplinary conviction or the imposition of sanctions. Instead, Gail alleged that various USP-McCreary failed to protect him by allowing a dangerous weapon to be misplaced in such a way that the weapon fell into the hands of Inmate J.W., who then used that weapon to inflict serious bodily injuries on him. [*Id.*] Gail did not ask that his disciplinary conviction and sanctions be set aside; instead, he asked that the employee or employees responsible for supervising tools and for inspecting cells (to ensure that inmates do not have access to dangerous contraband or weapons) be fired, and that stricter policies be put in place "…to prevent dangerous tools from being used as weapon." [*Id.*]

On March 26, 2013, Warden Holland denied Gail's administrative remedy request, explaining that all prison staff members are subject to various BOP regulations which proscribe certain types of conduct, but that prisoners are not entitled to the result of investigations into staff misconduct. [*Id.*, p. 1] Gail then appealed to the BOP Regional Office, arguing that the prison staff did not respond appropriately to an emergency situation. [*Id.*, p. 5] On April 8, 2013, the BOP Regional Office denied Gail's appeal, finding no evidence that the USP-McCreary prison staff failed to comply with proper policies and procedures in emergency situations. [*Id.*, p. 4]

On May 7, 2013, Gail submitted his final administrative appealed to the BOP Central Office, asserting that several USP-McCreary staff members failed to protect him by misplacing a hug bolt screw, thus allowing Inmate J.W. to gain access it and use it as a weapon to stab him eleven times. [*Id.*, p. 7] Gail reiterated his contention that the BOP should terminate the employment of "M." Parsons and "…whoever else drope [sic] the ball

and fail to supervise dangerous tools." [*Id.*] On September 23, 2013, Harrell Watts, administrator of the National Inmate Appeals, denied Gail's final appeal, stating therein that the conduct of BOP staff members is governed by BOP Program Statement 3420.09, <u>Standards of Employment Conduct</u>; that the BOP took seriously all allegations of staff misconduct; and that Gail's allegations of staff misconduct had been forwarded to the appropriate component of the BOP for review. [*Id.*, p. 6] Watts further noted that on September 3, 2013, Gail had been transferred to USP-Allenwood. [*Id.*] Gail filed this *Bivens* action on July 16, 2014.

In addition to alleging that the defendants failed take proper steps to protect him from harm on January 12, 2013, he also alleges that he was not "fighting" with Inmate J.W. on that date, but that he was instead merely defending himself from Inmate J.W., who was wielding a dangerous weapon at him. [R. 1, p. 4] Gail alleges that the Incident Report did not accurately describe the incident between him and Inmate J.W. on January 12, 2013, because Parsons did not mention that Inmate J.W. had used a "weaponized screw" to stab him eleven times, or that four inmates had been involved in the altercation. [*Id.*] Gail contends that Parsons should have charged Inmate J.W. with "Aggravated Assault," and that Parsons should not have charged him (Gail) with "Fighting," because he was only trying to defend himself against Inmate J.W., who was attacking him with a dangerous weapon. [*Id.*] Gail contends that the Incident Report filed against him was erroneous, and that his disciplinary conviction was not factually warranted.

Gail seeks $10 million in compensatory and punitive damages from the defendants for the personal injuries he sustained; an order terminating the employment of Warden Holland, Lieutenant Leroy Chaney, and Correctional Officer "M." Parsons; and an order

expunging from his BOP record his disciplinary conviction for "Fighting." [R, 1, p. 12, § IV "Relief"]

## DISCUSSION

Gail's *Bivens* complaint, and demand for compensatory and punitive damages, must be dismissed without prejudice. As noted, Gail was convicted of a "Fighting with Another Inmate," which is a BOP disciplinary violation, in connection with the events of January 12, 2013. Because of this fact, Gail cannot assert claims and seek damages under *Bivens* unless and until he can demonstrate a favorable termination of his disciplinary convictions. In *Heck v. Humphrey*, the Supreme Court established the so-called "favorable termination rule." 512 U.S. 477, 114 S.Ct. 2364 (1994). The Court explained that rule as follows:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id., at 486-87.

The Supreme Court has held that any claim for damages that, if successful, would "necessarily imply" the "invalidity of any outstanding criminal judgment against the plaintiff" is not cognizable under § 1983 unless the plaintiff demonstrates that judgment's prior invalidation. *Id.*, at 487. This rule promotes the finality of and consistency in judicial resolutions by limiting opportunities for collateral attack and averting the "creation of two conflicting resolutions arising out of the same or identical transaction." *See id.*, at 484-485.

In *Edwards v. Balisok*, the Supreme Court later extended the "favorable termination rule" to a prison disciplinary hearing resulting in the deprivation of good-time credits, where the prisoner's civil rights action alleging the denial of his due process rights would "necessarily imply" the invalidity of the deprivation of good-time credits. 520 U.S. 641, 646 (1997). The Supreme Court has subsequently clarified that a prisoner is required to show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration of his sentence is affected. *Muhammad v. Close*, 540 U.S. 749, 754-55, 124 S.Ct. 1303, 1306 (2004).

Because Gail's disciplinary sanction included the forfeiture of 27 days of good-time credits, the duration of his prison sentence is at issue. Gail contends that the defendant prison officials failed to properly supervise the running of the prison, and thus negligently allowed Inmate J.W. to gain access to an implement which was a dangerous weapon. He further asserts that he was not guilty of "fighting" with anyone; that if he used any physical force against Inmate J.W., it was to defend himself from Inmate J.W.'s aggression and use of a dangerous weapon; and that he (Gail) was improperly charged with, and convicted of, a disciplinary infraction which he did not commit. In direct contrast, the BOP has stated in response to Gail's administrative remedies that prison staff members were not negligent in any respect as to the running of prison, and that Gail was guilty of fighting with Inmate J.W. and/or other inmates, prohibited conduct of which Gail was properly convicted. In this *Bivens* action, Gail seeks not only damages from the defendants who he alleges were negligent and failed to protect him from harm, but also the expungement of that disciplinary conviction from his BOP record.

Gail thus alleges in his complaint that because he was not "fighting," and was merely defending himself from Inmate J.W., his disciplinary conviction for "Fighting with

8

Another Inmate" was not factually justified. If Gail were to succeed on those claims in this *Bivens* action, he would thus necessarily invalidate USP-McCreary's disciplinary determination under which he was found guilty of improper conduct ("Fighting with Another Inmate"), and through which he lost 27-days of good-time credits. A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 or *Bivens* to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. *See Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000); *see also Lewis v. Pendell*, 90 F. App'x 882, 883 (6th Cir. 2004) (finding that prisoner was precluded from collaterally attacking prison misconduct hearing or conduct underlying disciplinary conviction by alleging retaliation under 42 U.S.C. § 1983, where favorable ruling on his retaliation claim would imply invalidity of disciplinary conviction); *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003) ("Because a favorable ruling on Denham's Eighth Amendment claim [alleging excessive use of force by prison officials] would imply the invalidity of his disciplinary conviction, this claim is not cognizable.") Because the loss of days of good-time credits directly affects the duration of Gail's prison sentence, Gail must demonstrate a "favorable determination" of his prison disciplinary conviction under *Edwards* and *Muhammad* before he can seek damages related to that conviction under *Bivens*.

To establish a favorable termination, Gail must first successfully challenge the validity of his disciplinary conviction by filing of writ of habeas corpus pursuant to 28 US.C. § 2241. Gail must first administratively exhaust such claims which directly challenge his disciplinary conviction within the BOP's administrative remedy process. This Court takes no position as to whether the BOP administrative remedies which Gail has already pursued through the BOP Central Office level would suffice for purposes of challenging his disciplinary conviction. If, and only if, Gail's prison disciplinary conviction

9

is invalidated during that process, may he then bring a civil action for the alleged harm caused by the facts which resulted in his disciplinary conviction and resulting sanctions. Gail's *Bivens* complaint will therefore be dismissed without prejudice to his filing a writ of habeas corpus under § 2241, and obtaining a favorable termination of his disciplinary conviction for "Fighting with Another Inmate."

For these reasons, the Court concludes that Gail's current construed Eighth Amendment "failure-to-protect" claims are premature. Gail's complaint will be dismissed without prejudice, and Judgment will be entered in favor of the named defendants.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Plaintiff Devrick R. Gail's 28 U.S.C. § 1331 civil rights complaint [R. 1] is **DISMISSED WITHOUT PREJUDICE.**

(2) This action will be **STRICKEN** from the Court's active docket.

(3) Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This August 8, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY